Good morning. Good morning, Your Honor. Frank Tobin for Tri-City Health Care District. Mr. Ricos is also here on behalf of Mr. Anderson and he and I had decided that I would address the anti-slap motion for eight minutes, that Mr. Ricos would address his appeal for five minutes, and then collectively we would reserve two minutes for rebuttal. Okay, so eight, five, and two. Okay, two for rebuttal. All right. Just before you start the clock, all right, basically lawyers sometimes, like, try to go over their time, and the poor person sitting at the table gets all antsy, thinking, like, they're taking up all of my time. If we're asking questions and it goes over the time, I still will give you your five minutes, all right? If we don't have any more questions, I'm going to stop you at eight, whether you want to stop or not, so that he'll have his five. Thanks, Your Honor. Thank you. May it please the court, Your Honor, we're here to address the court's ruling denying my client's anti-slap motion as to the 13th cause of action for false light and the 14th cause of action for blacklisting. I think the judge made the correct decision in finding that these statements were made in connection with a judicial proceeding and thus subject to the protections of the anti-slap statute. However... Well, isn't it more, well, but that, that isn't, I guess if you try cases in the press, then it's part of a judicial proceeding, but isn't your better argument that it's an opinion? Well, I'm just talking about the coverage of the anti-slap, and once anti-slap covers, because it's in connection with a judicial proceeding, then we get to the issue of whether Mr. Stein can show that he's going to prevail on this cause of action, and that's clearly where we believe the court erred, because what we're talking about are essentially two statements. Long history of being a disgruntled employee, and those are clearly statements of opinion, and two statements of opinion, Your Honors, do not make a statement of fact. And with respect to disgruntled, we've cited numerous cases throughout the United States where disgruntled employee has been found to be a statement of fact, and a statement of opinion. And I don't believe that Judge Moskowitz disagreed with us there. I think where he took issue was the qualifier of long history. Long history, that that's a question of fact. And, Your Honor, long history, again, if you look at the dictionary definition of long, it means not short. Long history could be a number of things, weeks, months, days, years. And we've also cited cases such as the Levy case, where somebody said somebody had a history of bad reporting, and saying they had a history didn't cause that to become a statement of fact. And we've cited the Rinaldi case, where somebody said there was a pattern of poor judicial decisions, and the word pattern did not cause the error. A little bit different question. Do I own any deference to the District Court on this determination of what is a fact and what isn't? I don't believe so, Your Honor, because whether something is an opinion or a provable fact is a question of law, and we've cited. It's a question of law. Yes, Your Honor. So I don't own any deference to the District Court in making that determination. No, well, I know we're here on De Novo Review, but even on De Novo Review, it seems to me that one can think about De Novo Review as to the first issue, and it seems pretty straight, or the first factor. Then I move into the second step of the analysis, and now I'm trying to determine whether it's a fact or an opinion. Do I own any deference to the District Court? And our position is that whether something's a statement of fact or opinion is a question of law. Okay. That can be independently cited. I understand. Do you have something on point on that, a case? Yes, Your Honor. I mean, I found a general overall case. This seems a little bit different. I don't want you to waste your argument by looking through for cases. Go on with your argument, but I just wanted to know I thought about that. Yes, Your Honor, and I think that the issue of whether something's an opinion or fact and whether it can be actionable is one of constitutional importance, because we've cited the cases of... Would you agree with me, let's just move on, would you agree with me that the factors to be used in the second step of the analysis are those which are whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, whether the defendant used figurative or hyperbolic language that negates that impression, and whether the statement in question is susceptible of being proved true or false. Yeah, I believe those are the things that you'd consider, and I think the Dworin case that we cited is important because in Dworin we had the same statement, disgruntled former employee, and Dworin found that that statement was not susceptible to objective verification, and that's an issue I have is we have statements that are not susceptible to objective verification. I mean, how would we try this case, Your Honor, if we're dealing with statements that are not subject to objective verification? I'm not sure how we would prove or disprove a statement in front of the court, and in addition... But however, in Partington it says, when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts, and leaving the reader free to draw his own conclusion, those statements are generally protected. That's correct, Your Honor, and here it was certainly a statement of opinion, and that he was a formal disgruntled employee, and they didn't supply the why, and so he could have been a former disgruntled employee because he wasn't paid, and that would be reasonable, that wouldn't be something negative, or he could have been a former disgruntled employee because he was a troublemaker or something like that. But without saying why he was a former disgruntled employee, I believe the case law outside of this circuit is pretty clear that that's an opinion, and then we also cited the Grillo case in California, which found that the word angry is a statement of opinion, and angry is a synonym of disgruntled. So how do you distinguish manufactured home communities? And what was the holding in that case? I'm not following. Well, they held the opposite of where you want to go. I think there was a dissent in there, if I don't remember. There is a dissent. Yeah. They said the supervisor publicly accused MHC of preying upon elderly tenants with fixed incomes, being a greedy, profit-driven company that enjoys forcing the elderly out of their homes, engaging in rent, gouging at its worst. I think in cases. How is that different from a disgruntled employee? Right. I think that you're supplying objectively verifiable facts in that context, whereas here there are no facts supplied. It's just former disgruntled employees. And if we look at cases like McGreevy or Simas, those hold that saying somebody is a former disgruntled employee is not implying any approvable fact. So unless you have a context of other things that would be provable, I think the law is by itself, in the way that this was stated by our client, is not actionable. Do you have other questions? Go ahead. I'm keeping track of his time. Why is that not hyperbole? Why is what he said not hyperbole? In the manufacturer's home case? No, in your case. It reads like hyperbole. I don't believe it is hyperbole, Your Honor. I believe it's a statement of opinion where they're trying to explain why the case doesn't have verifiable facts. Disgruntled employee? Well, right. It's a disgruntled employee. But, again, the cases that have dealt with this issue have indicated that that's a non-actionable statement of opinion. There's nothing about that, irrespective of what you call it, that would cause it to be actionable. Thank you. I have no other. I wanted to ask. I'm not quite sure I understand why you think the reporter's privilege applies. Mr. Rikos is going to address the reporter's privilege, Your Honor. Okay. All right. Thank you. Thank you, Your Honor. Okay. So we'll put the clock back to seven minutes. So you're going to use five and keep two for rebuttal, right? Correct. Okay. Thank you. Good morning. May it please the Court. George Rikos on behalf of the appellant, Larry Anderson. Mr. Anderson has two appeals pending. One stems from the motion to deny the partial summary judgment as to his qualified immunity privilege. And then the other appeal deals with, as Mr. Tobin indicated, the anti-SLAPP ruling. Unless the Court has a preference, I'll go ahead and begin with the anti-SLAPP motion. I thought he would address that. Yeah. It's just that doesn't seem like your stronger argument here. I mean, this is not a judicial or quasi-judicial proceedings unless we write that trying your case in the press is quasi-judicial. No, I just wanted to address one other issue other than the reporter's privilege. Okay. The issue being that if the statement is subject to the anti-SLAPP statute, then the burden shifts to Mr. Stein to prove that he has some probability of prevailing. Right. We know that. And in this context, there's no evidence in the record that Mr. Stein – I'm sorry, that Mr. Anderson uttered the statement or had anything to do with the statement. The statement's attributed to David Bennett and Tri-City, and there's absolutely nothing in the record except for the fact that the district court hinged itself on the fact that Mr. Anderson had a prior working relationship with Mr. Anderson and that knowledge somehow was impugned to Tri-City. But there's no evidence in the record that he authored, suggested, recommended, directed that statement. So if the burden has shifted to Mr. Stein, there should be some showing that Mr. Anderson uttered the statement or had anything to do with it, and there's just nothing in the record on that point. Okay. As for the – unless there's any questions. Qualified immunity. I'll switch to the qualified immunity. The district court, I think, properly held that the actions of Mr. Stein reasonably could be interpreted as a resignation. Him getting up abruptly, him leaving the meeting, him packing up his belongings and saying he was done. The district court seemed to take issue with the fact that after Mr. Anderson accepted the resignation, Dan Stein then challenged the resignation. Mr. Anderson's response to that was turning it over to the legal department, and I don't think that that action somehow suggests that he acted unreasonably or with some sort of intent to deprive Mr. Stein of his due process rights. Okay. We have to give all inferences that Mr. Stein makes in order on the summary judgment because you're moving against him. Doesn't he allege something to the effect of that Mr. Anderson was involved in the process of once it was turned over to HR and that's where he was denied due process? He does. He suggests he must have been involved because at some point Kathy Naylor, the HR director, reported to Mr. Anderson. But the record shows that Kathy Naylor reported to Casey Fatsch, the COO, and the record shows that the March 22nd termination letter issued by Kathy Naylor, she worked exclusively with that. Isn't it a tribal issue of whether he had anything else to do with it? I mean, or is that just a bold accusation on his part that has no support? He does make that statement, so what do we do with it? He does make that statement, but it's based upon pure speculation. Didn't Naylor testify that she attended a meeting about his termination with not just Borkenheim but also Anderson? Correct. So why would that not inferentially support that he had some role in it? Because there's nothing to suggest that he was doing anything other than following the legal advice of Alison Borkenheim. Well, we don't know because you've asserted attorney-client privilege over the details of that meeting, right? Actually, Tri-City did because it was their attorney-client privilege, but yes, Your Honor, the privilege was asserted. So for all we know, he could have played an active role in that meeting. He could have, yes, but there's no evidence to suggest that. But how would he get the evidence if you assert attorney-client privilege? Well, that's true, except, again, Tri-City asserted the privilege. It's their privilege. That information isn't going to come out at some other time. And the question, I think, goes back to, objectively, did Mr. Anderson act unreasonably to deny himself the qualified privilege by working with the legal department? The evidence shows he's working with the legal department. As soon as Dan Stein challenges his resignation, he's obviously concerned, directs Mr. Stein to go to the legal department. I don't see how that is an unreasonable action that sets into motion Mr. Stein's deprivation of his due process rights. You might respond to the reporter's privilege question. I think we had brought the reporter's privilege because it sounded like the court may have had a question on that. Do you want me to direct it? Well, that it doesn't qualify. Yeah, that's our question. That's the question. Well, the statute, I think it's Civil Code 47-D1, says a communication to a public journal. Here, I think we have David Bennett communicating in response to a reporter's request. But arguably, that reporter's privilege is a secondary point of my analysis because, again, Mr. Anderson didn't utter the statement. David Bennett. Okay, thank you. All right, so when we come back on the clock, we'll keep two minutes for rebuttal. All right, we'll hear from Mr. Stein's counsel. Good morning. Good morning, Your Honors. Will you be doing all the argument? Yes, I will, Your Honor. Okay. May it please the court, Paul Corelli on behalf of Appellee Mr. Stein. With me is Mr. Ardiano, who is counsel of record in the trial court. I'd like to start with a question that Judge Smith asked about the deference to the trial court in this particular matter on the anti-SLAP. I thought that was an interesting question. And I think the answer to that question is twofold, and I'll explain why. From a pure appellate procedure, this is obviously a de novo review from the anti-SLAP. And the question of law as to whether the statement is actionable. However, the test for whether the statement is actionable defamation or not is whether a reasonable fact finder could conclude that the published statement declares or implies a provably false assertion of fact. And it seems to me that Judge Moskowitz, in deciding this particular anti-SLAP, is the reasonable fact finder who's making a determination that yes, the statement that Mr. Stein had a long history of being a disgruntled employee implies that there was a series of complaints made over a long period of time. So as a reasonable finder of fact, and I think Judge Moskowitz is reasonable, there should be some deference made to that under the test built into the defamation standard. Did you find a case that said that? I did not, Your Honor, but I thought it was an interesting argument. I mean, I read what we were looking at, and I read what the situation was. That's why I wanted to ask the question, and I would have asked you to. So I appreciate your comment. Thank you, Your Honor. But going on to... The question isn't necessarily whether it's a fact or it's an opinion. Again, the test is whether the statement discloses or implies a provable false assertion. In this case, the statement that the employee was disgruntled for a long history implies that there was at least multiple complaints made to the employer over a long period of time. And that period of time implies a long period of time, probably for the duration of the employment, if not even further back, because the two employees worked with each other prior to Tri-City. So it also implies that the employer's response to such complaints was lawful, or they had lawful policies. So whether the complaint was made or not is easily provable because the question can be asked at a deposition or a trial, did Mr. Stein complain about any of the employees? I'm not sure why I understand you think it implies all that. Supposing the statement had been, Mr. Jones is a difficult person and has a history of being difficult. That wouldn't mean there had to be complaints filed. That wouldn't mean there had to be responses that were lawful to the complaints. It would just mean that people had observed from time to time that he was not the easiest person to get along with or something like that. I agree, Your Honor, that the word difficult is different. So why is disgruntled different? Because disgruntled to me, and I think a reasonable person reading that statement, particularly a future employer who's googling Mr. Stein's resume, et cetera, and trying to find out whether they should hire him in the future, looks at that and says disgruntled employer. That means that he's made a series of complaints. It's not just that people didn't get along with him. It's that he was disgruntled. He was complaining about the practices of the employer. And why would we want to hire someone who's constantly complaining about reasonable, lawful practices of an employer? That's not the dictionary definition of disgruntled, is it? I'm not sure exactly what the dictionary definition of disgruntled is. Well, isn't that where we would start? That would be a good place to start, Your Honor. And I don't know of any dictionary. I can't say I canvassed them all, but I don't know of any that says disgruntled means a long history of filing complaints to which the employer makes lawful responses. Well, I think that the word disgruntled and long history, what it implies, and we're allowed to have the implication, is that there was a series of complaints over a long period of time made to the employer. And whether that's provably false or not is permissible in this situation, because, again, you can ask employees the question, did Mr. Stein make complaints in the past? And they can answer yes or no. And I believe even in the... I know it's outside the record of the anti-slap, but I believe even in the qualified immunity, there was some deposition testimony to that extent. Did you ever hear him making complaints? So I think that's a provably true or false statement. Let me ask you a hypothetical question. We haven't conferenced on this, so it's just a purely hypothetical question. If we were to conclude that this is an opinion, and so, therefore, the court was wrong on the anti-slap and that they would be likely to prevail that the guy had a right to have his opinion, so then you're liable for attorney's fees on that amount, right? As it attaches to those charges. I believe that the statute says that the plaintiff would be liable for paying the attorney's fees for bringing the anti-slap motion. Right. Yes. Well, and... but then... all right. And if... so then those charges are gone. But on the qualified immunity, who's... you still have left in the lawsuit the company, correct? Yes, Tri-City. And are there other individuals? Mr. Anderson. No, besides Mr. Anderson, are there... it's just... it's the company that's left is... I believe it's just those two defendants, Your Honor. Oh, okay. I'm sorry, was the hypothetical about the... Well, I was just curious, if you lost on everything here, what... there's still a lawsuit that's pending. Yes, the lawsuit still has been continuing on in the district court while this... Right. And there's no discovery state on these issues, so there hasn't been... Because of the anti-slap situation, right? The anti-slap situation. Okay. So I hope I've answered all of the judges' questions on the anti-slap issue, opinion or fact, and I can take some time and move on to the qualified immunity if the court is... Fine with me. ...prepared to do that. Okay. On the qualified immunity, the... Mr. Stein walked out of the meeting, explained I walked out of the meeting because I... and just said I was... I'm leaving, it's his words, because he was very frustrated in that meeting. It wasn't that he was leaving the company altogether, he was leaving the meeting, and then he sends an e-mail... But didn't... there's a little more conduct. He took all his pictures, right? Well, I didn't take all his pictures. Did he take some stuff out of the office? He took a few personal items out of the office, including some diplomas, but he didn't take everything. So he took some personal items... Did he say any... did he make any comment there, I've had it, or whatever? He told... well, he... first he sent an e-mail. Well, just a minute before he sent the e-mail, before he got out. Seems to me the record says he told a staff member he was done. Yes, and he explained it, as far as I can recall, that... Well, he didn't explain it to the staff member. Right. He may have tried to explain it thereafter. But so he... he was in the meeting, the defendant yells at him, he says he's leaving, he went to his office, he collected some things. That's a new twist on it, really, to me, but he collected things. Then he told the staff member he was done and he went home. Well, he also checked in with HR because... But that was after he was home. I don't believe so. I think it's deposition testimony, and I could be wrong, Your Honor. Well, I got that he telephoned the director of employee health services thereafter and asked for a form for medical leave. Okay. That's taking the facts as I've got right from the record. And his deposition is in the record, and it's very specific. Well, I understand. That's why I tried to make sure I got the facts. Because one of the things is, if you told everybody I'm leaving, you went to your office and collected things, and you told a staff member you were done and went home, and then, once home, calling the director of employee health services and asking for a medical leave form, is that enough to prevent you from getting the qualified immunity? That's the question. Yes, Your Honor. And what he did was, when he went to his office, he said he only took a few things. He was worried that there were certain things that may disappear if he was out on a short leave. So he took those with him, and he took a fan and some diplomas. They were stacked up. They were not hanging on the wall or anything like that. And he took those home for his personal property. And then, whether the telephone call to HR came before or after he walked out of the building, I don't think is particularly important in terms of the qualified immunity, because it shows that his intent was, and the light most favorable to Mr. Stein is that his intent was that he was seeking a medical leave. And the e-mail that he sent has the subject line, if I recall correctly, at 1102 or whenever it was, you know, immediate stress leave. You know, he wanted the forms to go on on that medical stress leave. That was known to Mr. Anderson right away. And when Mr. Anderson sends the letter later that day, Mr. Stein immediately responds and says, hadn't resigned. And... So your adversary says, after that, all Anderson did was turn it over to legal. So what about that? Well, he did more than that, because he sent the letter on the 2nd. He sent e-mails on the 3rd. He turned off Mr. Stein's e-mail capability for the company and was, according to Mr. Stein's testimony, involved because he's the CEO and had knowledge of what was going on and imputed that knowledge as imputed to the company. But he knew what was going on, and he didn't stop it. So when you take all those facts together, I think it shows that Mr. Anderson was involved. What do I do with the idea that he e-mailed Anderson prior to the meeting and just wanted to discuss the severance package? You'll have to forgive me. Dang Anderson had prevented him performing his obligation to report directly to the board. That's at S.E.R. 58 and 59. I believe, Your Honor, that was sometime before that happened. Well, right, but then, Anderson, if someone's asked you about a severance package and then you get up in the middle of a meeting and say, I'm leaving, and then you collect your goods and tell people, I'm done, you know, I mean, most people don't talk about a severance package with someone unless they have some, you know, they're contemplating leaving. Well, Mr. Stein's... Anderson began making derogatory remarks. That's in your best... That's putting the facts in your favor. Regarding Stein, reduced his role at Tri-City by refusing to meet with him and heed his legal advice, undermined his authority, and instructed him to withhold information from the board of directors. That's your idea of a good time, as I understand it. Thereafter, Stein e-mails Anderson, SCR 58 and 59, asking to discuss his severance package since Anderson was preventing him from performing his obligation to report directly to the board. Then, thereafter, Stein... The second part, Stein's IBS continued, and thereafter that, he requests an accommodation or to go part-time, which Anderson refused. I would point, Your Honor, to the deposition testimony of 58 and 59 of the SCR, because Mr. Stein is asked, are you asking Mr. Anderson to negotiate a severance in January of 2012 with you? And he says no. I think the point of that is to let him know that if I'm going to serve as a compliance officer of this entity, that OIG, at the federal sentencing guidelines, required that there is a direct and open line of communication with the board, and that was not occurring, and it needed to occur, and I wanted it to occur. Your question, and you also wanted your severance package answered if that wasn't going to happen. Well... And if they would not comply with the rules and the law and their duties. All right. I understand your answer. Thank you, Your Honor. Is there anything further from the court? What do you say to the facts in the record to suggest that Anderson didn't have any part in making a statement in the first place? I don't understand. The disgruntled employee statement was not made by Anderson, and he suggests Anderson didn't have any part in making it, didn't have any part of it, and therefore there's no way he could be responsible. That's his argument. I understand. I think there's two things. The comment is in regard to the question from the press. The people that are involved in the case are Mr. Anderson and Tri-City, so... But do you have any... But are you... Do you have any information? Did you rebut that with anything? Because they're saying someone else made it. Well, there's no question somebody else made it. Someone else made the comment. It was on behalf of Mr. Anderson and Tri-City. Where did the press say that? I didn't read that anyway. This guy was asked a comment. I don't even know that he said, I represent Tri-Cities, and this is the way I think. He said what he said about being a disgruntled employee, and all I got to say is I read the evidence to try to find out whether Anderson could be linked to that, and I can't find it. Well, the question from the reporter was the comment on the court's ruling. The court case obviously involves both defendants, so the comment coming from Mr. Bennett appears to be on behalf of both of the defendants. And Mr. Anderson, as... See, this is the problem I have. If I have a law clerk out there talking for me and he makes a political statement, I'm not going to be very happy about it. I didn't authorize him to do it. There's no reason for him to have done it. He's stupid for having done it, and... But does that bind me? If it's talking about the case, because Mr. Anderson also has the ability to retract that statement if he didn't want it implied to him. So... Well, I was just looking for what evidence directly we could find which would link Anderson to it, and I tried to go through what you suggested was the link, and I couldn't find it, and so I was just asking you about it. I think that's the answer, Your Honor, is that it... Okay. All right, thank you for your argument. Thank you. Thank you. All right, you have two minutes. I was going to take a minute and a half, and Mr. Ricos was going to have 30 seconds, Your Honor. Okay. Better stand nearby. With respect to the deciding this is a matter of law and not giving deference to the trial court, the case I was trying to cite is the Cop case, which is in our brief. And then with respect to what Mr. Stein is saying about reading in all of these things into the term disgruntled, like he's a complainer and all of that, that's not there, and it's like what I said before, that because of the why he was disgruntled was not supplied, and when you go back and look at the cases, they say that former disgruntled employee does not imply a provable statement of fact. And then in addition, when he's saying, well, it's out in Google and people can see it, even though these are statements of opinion, if you read Mr. Stein's own complaint, he said that over a period of time he was angry and he was disappointed. So he's already put something out there in the public indicating that he thinks he was disgruntled even though it's an opinion or a statement of fact. And there was one comment on the litigation privilege, and I would just say I don't think we get there because this is a non-actionable statement of opinion, but I don't think this is litigating in the press. I think if you read the Welch case, these were narrow comments about allegations in the lawsuit, and the Welch case found that even though you don't litigate in the press and that's wrong, it found that limited comments such as these about the allegations are still protected by the privilege. Thank you. Well, I don't see how the last statement fits that situation. The entire statement issued in response to the inquiry by the press says in the reference decision the court simply holds this, doesn't hold that. All that fits what you're talking about. But then they say further, seemingly unrelated to the lawsuit or certainly to reporting on what has occurred, Mr. Stein is a disgruntled former employee who has a long history of being a disgruntled employee. I think it's all part of the statement, Your Honor. Why? Because it's offering an explanation as to why the lawsuit doesn't have merit and it's offering an explanation as to why Mr. Stein would bring an otherwise meritorious lawsuit as opposed to just leaving it the lawsuit has no merit without further explanation. And I think that a litigant should be able to explain their position on the pleadings as opposed to worrying about certain statements in the same context triggering liability. Because if the litigant didn't have that freedom, I think that people would no longer comment or be able to have their side heard in response to press inquiries. This wasn't something that we actively sought out like in the Rothman or those cases. We were responding. We knew an article was being printed and we should have had a right to respond. So if that's true, then it's the response is the response on behalf of both defendants, yes? Well, I'm looking at Tri-City. I'm just asking if it is what you just described, then this is a statement being made on behalf of both defendants, yes? Well, my client was making the statement. My client was Tri-City. I would leave the issue of whether Mr. Rikos's client could be attributed to that statement to Mr. Rikos, Your Honor. Got it. Thank you, Your Honor. Thank you. 30 seconds. Sprint. I just wanted to respond to two things that Mr. Stein's counsel raised. First, that Mr. Anderson knew that Dan Stein only took a few of his belongings. I don't think that's accurate. The record reflects that after Mr. Stein left, took his belongings, Alison Borkenheim called the legal department, checked in, was told that he had taken his things, which I think substantiates Mr. Anderson's belief that he had resigned. The second being that Mr. Anderson was aware of Dan Stein's request for medical leave documentation. That email was sent to Rudy Gastelum, who Mr. Anderson was not on that email, and there's no evidence to suggest that he was provided information and that medical leave documents were requested. So that's all I have, Your Honor. All right, thank you. This matter will stand submitted.
judges: Callahan, N.R. Smith, Rakoff